No. 25-4168

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

NAYMON FRANK,

*Plaintiff-Appellant*,

v.

TESLA INC. and SUZIE HATZIS

*Defendants-Appellees*.

On Appeal from the United States District Court
No. 2:22-cv-01590-MEMF(AGRx)
Hon. Frimpong

_____

## APPELLANT'S REPLY BRIEF

_____

James G. Bohm (SBN 132430)
BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
jbohm@bohmwildish.com

efile@bohmwildish.com

*Attorneys for Appellant Naymon Frank*

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................... i

TABLE OF AUTHORITIES ............................................................................ ii

SUMMARY OF ARGUMENT ..........................................................................1

ARGUMENT ....................................................................................................1

    A.    The District Court Erred in Granting the Motion to Compel Arbitration .......................................................................................1

        1.    Although the Parties Entered into an Arbitration Agreement, Frank Had No Alternative but to Sign the Arbitration Agreement ................................................................................2

        2.    Frank's Unconscionability Arguments Have Merit...................2

    a.    The Arbitration Agreement is Procedurally Unconscionable ..............4

    b.    The Arbitration Agreement is Substantively Unconscionable.............6

    B.    The District Court Improperly Denied the Motion to Vacate.............13

        1.    The Arbitrator's Decision to Limit Discovery was Misconduct ................................................................................14

        2.    The Arbitrator Exceeded Her Powers .......................................18

    a.    The Judgment Entered Against Frank Resulted from the Arbitrator Exceeding Her Power by Granting Summary Judgment When Triable Issues of Fact Exist..................................................................................19

    b.    The Arbitrator Did Not Permissibly Set Discovery ...........................22

CONCLUSION ................................................................................................24

Form 8. Certificate of Compliance for Briefs.............................................25

Certificate of Service for Electronic Filing................................................26

i

TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 147 (1970)................................. 21, 23

*Baltazar*, *supra*, 62 Cal.4th at p. 1243, 200 Cal.Rptr.3d 7, 367 P.3d 6...................3

*Baxter v. Genworth North America Corp.,* 16 Cal.App.5th ............................ 10, 11

*Carlson v. Home Team*..........................................................................................13

*Chiron Corp. v. Ortho Diagnostics Sys*., 207 F.3d 1126, 1130 (9th Cir. 2000)....1, 2

*Davis v. Kozak*, 53 Cal. App. 5th 897, 906-907 (2020)........................................5, 13

*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ...............................2

*Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F. 3d 634 (9th Cir. 2010)
..................................................................................... 20, 21, 22

*Lhotka v. Geographic Expeditions, Inc*. (2010) 181 Cal.App.4th 816, 820–821, 104
Cal.Rptr.3d 844...........................................................................4

*Liberty Mutual Ins. Co. v. Superior Court*, 10 Cal. App. 4th 1282, 1289 (1992)...18

*Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.,* 44 F.3d 826, 832 (9th)…………20, 22

*Move, Inc., supra*, 840 F.3d 1152, 1158 (9th Cir. 2016) .........................................17

*Nguyen v. Applied Medical Resources Corp*., 4 Cal. App. 5th 232, 247 (2016)........3

*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012)
55 Cal.4th 223, 247, 145 Cal.Rptr.3d 514, 282 P.3d 1217 ............................3

*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911–912, 190
Cal.Rptr.3d 812, 353 P.3d 741 ........................................................................4

*Schoenduve Corp. v. Lucent Technologies, Inc*., 442 F.3d 727 (9th Cir. 2006) at 734
...............................................................................19

*Stirlen v. Supercuts* (1997) 51 Cal.App.4th 1519, 1536–1542,.............................13

*Tolan v. Cotton*, 572 U.S. 650, 656-657 (2014) ............................................... 20, 22

**Statutes**

9 U.S.C. § 10(a) .....................................................................................................13

9 U.S.C. § 10(a)(3) ........................................................................18

9 U.S.C. § 10(a)(4) ........................................................................19

Cal. Code Civ. Proc. § 2017.010 ...................................................8

Cal. Code Civ. Proc.§ 2025, subd. (d)(6) .................................17

**Rules**

Fed Rule Civ. Proc. 30(a) .............................................................23

Federal Rule of Appellate Procedure 32.1 ................................21

Fed. Rule Civ. Proc. 56(a) ...........................................................19

## SUMMARY OF ARGUMENT

This is an appeal from: 1) an Order compelling arbitration when the arbitration agreement was substantively unconscionable because it limited discovery and was procedurally unconscionable due to an inequality of bargaining power of the parties and an absence of real negotiation or a meaningful choice on the part of the weaker party; and 2) an Order denying Plaintiff/Appellant Naymon Frank's motion to vacate when the arbitrator:

- Refused to Hear Evidence Pertinent and Material to the Controversy

- Granted Summary Judgment When Triable Issues of Fact Existed

- Acted Outside the Scope of the Parties' Arbitration Agreement

- Refused to Allow Pertinent Discovery

## ARGUMENT

## A. The District Court Erred in Granting the Motion to Compel Arbitration

Appellant does not dispute that the FAA applies. Appellee cites *Chiron Corp. v. Ortho Diagnostics Sys*., 207 F.3d 1126, 1130 (9th Cir. 2000), stating that "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostics Sys*., 207 F.3d 1126, 1130 (9th Cir. 2000)

1

(emphasis in original) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).  However, immediately following this quote, the *Chiron* court acknowledges that, "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  Chiron, *supra*, at 1130.

Appellant also does not dispute that California law governs the formation of the Arbitration Agreement.

**1.  Although the Parties Entered into an Arbitration Agreement, Frank Had No Alternative but to Sign the Arbitration Agreement**

As previously stated in his Opening Brief, unlike Tesla, a multi-billion-dollar corporation with endless resources and an in-house legal team, Frank was an individual in need of a job when he signed the Arbitration Agreement.  Frank entered into a contract of adhesion with no meaningful opportunity to negotiate.  Nowhere in the Employment Agreement did Tesla indicate that Frank could have refused to agree to the Arbitration Clause, and agreement to the Arbitration Clause was a precondition to Frank's employment.

**2.  Frank's Unconscionability Arguments Have Merit**

Citing *Nguyen v. Applied Medical Resources Corp*., 4 Cal. App. 5th 232, 247 (2016), Defendant argues that "In keeping with California's strong public policy in

favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration."

However, the fuller argument leading up to this statement in *Nguyen*, *supra*, at 247, is as follows:

> Both procedural and substantive unconscionability must be present for the court to refuse to enforce a contract under the doctrine of unconscionability although "they need not be present in the same degree." (*Baltazar, supra*, 62 Cal.4th at p. 1243, 200 Cal.Rptr.3d 7, 367 P.3d 6.) Essentially, the court applies a sliding scale to the determination: " '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 247, 145 Cal.Rptr.3d 514, 282 P.3d 1217 (*Pinnacle*).)
> "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911–912, 190 Cal.Rptr.3d 812, 353 P.3d 741; see *Baltazar, supra*, 62 Cal.4th at p. 1245, 200 Cal.Rptr.3d 7, 367 P.3d 6 ["[c]ommerce depends on the enforceability, in most instances, of a duly executed written contract[;] [a] party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain"].)
> The trial court's unconscionability determination, absent conflicting extrinsic evidence, is question of law subject to de novo review. (*Pinnacle, supra*, 55 Cal.4th at p. 236, 145 Cal.Rptr.3d 514, 282 P.3d 1217.) " 'However, where an unconscionability determination "is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence." ' " (*Lhotka v. Geographic Expeditions, Inc*. (2010) 181 Cal.App.4th 816, 820–821, 104 Cal.Rptr.3d 844 *(Lhotka)*.) "In keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration." (*Id. at p. 821.*)

3

### a. The Arbitration Agreement is Procedurally Unconscionable

Defendant does not dispute that the Arbitration Agreement was a contract of adhesion. Defendant merely argues that courts have consistently held that the fact that the arbitration agreement is an adhesion contract does not render it automatically unenforceable as unconscionable.

The court in *Davis v. Kozak*, 53 Cal. App. 5th 897, 906-907 (2020), clearly sets forth why arbitration clauses/contracts of the type that Frank signed are contracts of adhesion, holding that, the arbitration agreement between employer and employee was a contract of adhesion and thus was procedurally unconscionable, where the agreement was a form contract on company letterhead with spaces for the employee's name and signature and stated that employee's agreement to its terms is "in consideration of" his employment, the agreement was presented as a standardized, non-negotiable term of employment, and there was unequal bargaining power between employer, which was a large and prominent multinational corporation, and employee, who was hired to middle manager position.

The facts in *Davis*, are strikingly similar to the present matter: the employment letter (which contained the arbitration provision) was on Tesla

4

letterhead, with spaces for Frank's name and signature, and was presented as a standardized, non-negotiable term of employment. **(3-ER-293-297)**

As in *Davis*, Frank was not required to try to negotiate with a "prominent multinational corporation." As the *Davis* court, *supra*, at 907, court explains:

> Although appellants seize on Davis's acknowledgment that he did not actually attempt to negotiate the arbitration terms, a complaining party need not show it tried to negotiate standardized contract terms to establish procedural unconscionability. [citations omitted]

At the hearing on the Motion to Compel Arbitration, the district court judge and defense counsel agreed that there was some degree of ***procedural*** unconscionability in the arbitration agreement:

> So I just wanted to confirm you don't disagree with the case law which indicates that in a situation where there is a contract of adhesion and one party clearly has superior bargaining power that there is -- you don't disagree that the case law states there is some degree of procedural unconscionability, correct?
>
> MS. LOPEZ: Correct, Your Honor. I don't disagree with that. I think it would be a very, you know, minimal procedural unconscionability. We did want to address that in our papers, you know, refuting plaintiff's argument that the agreement is procedurally unconscionable because it doesn't attach the JAM's rules.
> **(5-ER-856**, lines 12-23)

If the JAMS rules had been attached to the Arbitration agreement, Plaintiff would have seen the following JAMS rule relating to depositions (JAMS

Employment Arbitration Rules & Procedures, Effective June 1, 2021, Rule 17(b)), of which Plaintiff requests that the Court take judicial notice:

> (b) Each Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location, and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues, including whether to grant a request for additional depositions, based upon the ***reasonable need*** for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and the witness. [Emphasis Added]

However, as will be discussed in more detail, *below*, the arbitrator did not follow the "reasonable need" standard; rather the arbitrator imposed the "good cause" standard (which is a higher standard), and denied Plaintiff the right to take the depositions he wanted to take.

### b. The Arbitration Agreement is Substantively Unconscionable

Substantive unconscionability is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party. *Davis*, *supra*, at 910.

"In striking the appropriate balance between the desired simplicity of limited discovery and an employee's statutory rights, courts assess the amount of default discovery permitted under the arbitration agreement, the standard for obtaining additional discovery, and whether the plaintiffs have demonstrated that the discovery limitations will prevent them from adequately arbitrating their

statutory claims. *Id*. at 910-911.

In *Davis, supra,* at 911 – 912, the court found that the discovery limit in the employment arbitration agreement, which permitted each party to take a maximum of two depositions and contained no express provisions entitling the parties to propound interrogatories, requests for admission, or demands for production of all relevant documents, was substantively unconscionable, ***even if the arbitrator retained the authority to order additional discovery on a showing of "sufficient cause,"*** as the employee would be unable to vindicate his statutory rights under the discovery limitations of the arbitration agreement. In *Davis*, *supra*, the employee brought age and sex harassment claims against employer and executives alleging promotion of risky youth centered culture, and the case was factually complex and involved numerous percipient witnesses, executives, and investigators.

At the hearing on Tesla's Motion to Compel Arbitration, Plaintiff's attorney, James Bohm, emphasized that the Arbitration clause did ***not*** provide for adequate discovery, arguing as follows:

> MR. BOHM: Okay. I think there's a couple reasons
> why the entire agreement should not be enforced as opposed to
> be severed. Really the heart of this case comes down to
> whether or not there's an adequate right to do discovery.
> The problem is if this agreement is enforced, there
> will never be an adequate right for Mr. Frank to be able to
> do discovery into his claims because of two factors.
> (Reporter's Transcript, **5-ER-853-877**, at 860, lines 11-17)
> ****

> So, one, I think that Tesla will try to limit my
> client's ability to do discovery. These are claims that are
> going to be -- are going to need a lot of discovery to do
> because we're claiming pervasive racial discrimination in
> Tesla.
> The other reason is arbitrators don't have the
> power to enforce attendance of third-party witnesses at
> depositions in arbitration proceedings. (**5-ER-861**, lines 4-11)
> ****
> So my client is going to be unable to get the
> necessary discovery to prove these very serious claims unless
> he is in front of Your Honor in a court of law where we can
> compel discovery.
> (**5-ER-861** lines, 24-25; **5-ER-862**, lines 10:1)

In the Arbitration Clause, Tesla provides that the chosen arbitrator shall have authority to compel "adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law." (**3-ER-293-297** at 295.) There is no provision that guarantees what the discovery limitations would be, nor is the term "adequate" defined anywhere in the Arbitration Clause. For example, due to the choice of law provision requiring that the Employment Agreement be read in accordance with California law, Tesla could have specified that "adequate discovery" means all the rights and protections afforded under California's Code of Civil Procedure, which broadly allows discovery to all matters not privileged that are relevant to the subject matter. *See, e.g.*, Cal. Code Civ. Proc. § 2017.010.

As a result, what occurred in the present case (like in the *Davis* matter), was that the Arbitrator restricted discovery by limiting depositions to three depositions per party and any additional depositions ***would require a showing of good cause***, (**3-ER-379-384**), which was ***not*** in accord with the JAMS rules (Rule 17(b)), which only requires a showing of "sufficient need", which is a ***lower*** standard than "good cause."

> The Arbitrator's Joint Discovery Plan read as follows:
> The Parties initially will be able to conduct (3) depositions per side (not including expert witnesses) and one PMQ deposition. Additional depositions ***will require a showing of good cause*** to the Arbitrator. Pursuant to the Arbitrator's direction, any Party seeking additional depositions ***must show good cause*** for same on an individual basis (not thematic). (**3-ER-379-384**) [Emphasis Added]

In the ***Proposed*** Discovery Plan (*i.e.* which included what Frank initially proposed), Frank expressed his desire to abide by the discovery rules consistent with the California Rules of Civil Procedure, which does not put a limit on the number of persons each party can depose. (**4-ER-508-516**) In the ***Proposed*** Discovery Plan, Frank explained that there were twelve individuals that he would like to depose in order to obtain the necessary material evidence needed to present his case and have a fair hearing.

As *Baxter v. Genworth North America Corp.,* 16 Cal.App.5th 713,732 (2017)*,* explained, the default discovery (i.e. defendant's employees

would receive documents from their personnel and medical files, and each party

would be permitted to propound up to 10 interrogatories and five written requests

for documents to the other party, and to depose two individuals for a total of no

more than eight hours. (*Id.* at p. 727); the arbitrator was authorized to order further

discovery " 'for good and sufficient cause shown.' ") was "low," the burden placed

on the plaintiff "to justify additional discovery is somewhat greater than a simple

showing of need or good cause," and the plaintiff had "established as a factual

matter that she will likely need to conduct at least three to five times the number of

depositions allowed" under the default limitations. (*Baxter*, *supra*, 16 Cal.App.5th

at p. 730) Under the circumstances, *Baxter* determined that the default levels of

discovery would be inadequate to vindicate the plaintiff's FEHA rights (*Baxter*, at

pp. 728–729, and that it was "reasonable to conclude that her ability to prove her

claims would be frustrated" (*Baxter*, at p. 730, 224 Cal.Rptr.3d 556).

The *Davis* court (*supra*, at 914) similarly concluded that the discovery

limitations in the subject arbitration agreement were substantively unconscionable,

explaining:

> In concluding the arbitral discovery limitations
> would frustrate the plaintiff's ability to prove her claims,
> *Baxter* made the observation—equally relevant here—that
> **"[e]mployment disputes are factually complex, and their
> outcomes 'are often determined by the testimony of multiple
> percipient witnesses**, as well as written information about the
> disputed employment practice.' [Citation.] *Seemingly neutral
> limitations on discovery in employment disputes may be*

10

> ***nonmutual in effect***. ' "This is because the employer already
> has in its possession many of the documents relevant to
> an employment discrimination case as well as having in its
> employ many of the relevant witnesses." ' " (*Baxter*, *supra*,
> 16 Cal.App.5th at p. 727, 224 Cal.Rptr.3d 556.)
> [emphasis added]

In the current matter, the arbitrator imposed a "good cause" standard (rather

than the lower "need" standard): the discovery allowed was low (40 Requests for

Production, 30 Special Interrogatories, 20 Requests for Admission, 3 depositions -

excluding experts, plus a PMQ deposition); additional discovery required a

showing of "good cause." (which was ***not*** in accord with the JAMS Rule 17(b)

lower standard of "reasonable need.")  In addition, Frank (similar to the *Baxter*

case), had established that he would likely need to conduct at least three to five

times the number of depositions allowed under the default limitations.

An arbitration agreement also needs to be reviewed for "the paramount

consideration" of mutuality. *Davis*, *supra*, at 914  The court in the present matter

also acknowledged that the arbitration agreement was ***not*** bilateral as to

"Proprietary Information and Inventions Agreement by Court action instead of

arbitration", which was subject to a carveout:

> THE COURT: Counsel, it's a very small point, but I
> want to make sure that I understand, because in your briefing
> you argue that the agreement was bilateral, but it seems
> quite obvious that it's not to me because of the carveout.
> (**5-ER-857**, lines 20-23)

11

Courts have found a lack of sufficient mutuality where the agreement:

> [E]xempts from arbitration the types of claims an employer is
> likely to bring against an employee. (*Carlson v. Home Team
> Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 634–635, 191
> Cal.Rptr.3d 29 [excluding employer's "most likely claims"
> to enforce anticompetitive covenants and confidentiality
> provisions while employee "was required to relinquish her
> access to the courts for all of her nonstatutory claims"];
> *Stirlen v. Supercuts* (1997) 51 Cal.App.4th 1519, 1536–1542,
> 60 Cal.Rptr.2d 138 (*Stirlen*) [excluding claims pertaining
> to patent infringement and improper use of confidential
> information and competition].)
> *Davis*, *supra*, at 914-915.

It is unlikely that an employee such as Frank would bring a lawsuit against

Tesla regarding "Proprietary Information and Inventions." Therefore, the carve-

out to exempt "Proprietary Information and Inventions" causes of action from

arbitration was to the benefit of Tesla (and a non-mutual provision.) (**3-ER-293-**

**297** at 295.)

As in *Davis*, *supra*, at 917, the party with superior bargaining strength

(Tesla), did not articulate any legitimate business reason for the exemption. Using

the same analysis articulated in *Davis* (*Id*. at 917) considered in combination with

the discovery limitations previously discussed, the carve-out provision allows

Tesla to litigate the types of claims it would most likely bring against employees in

civil court with the full panoply of discovery at its disposal, while employees like

Frank have no choice but to arbitrate even the most factually complex statutory

claims subject to a discovery process that is far more restrictive and does not

impact Tesla in the same way for company initiated claims. Based on this analysis, the *Davis* court concluded that the plaintiff made a sufficiently strong combined showing of procedural and substantive unconscionability to render the arbitration agreement unenforceable. Frank contends that the court should have made the same determination in his matter – that the arbitration agreement was unenforceable and that the failure to deny the motion to compel arbitration was error.

The trial court's order compelled arbitration when the arbitration agreement was substantively unconscionable because it limited discovery and was procedurally unconscionable due to an inequality of bargaining power of the parties and an absence of real negotiation or a meaningful choice on the part of the weaker party.

### B. <u>The District Court Improperly Denied the Motion to Vacate</u>

Defendant cites the following standard for vacating an award:

Therefore, under the FAA, vacating an award is rare and may only be done where: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrator; (3) the arbitrator is guilty of ***misconduct in*** refusing to postpone the hearing, or ***refusing to hear evidence pertinent and material to the controversy***; or (4) the arbitrator exceeded their power, or so imperfectly executed it, that a mutual, final, and definite award on the subject matter submitted was not made. 9 U.S.C. § 10(a). [Emphasis added]

This is what Plaintiff is arguing that – that the arbitrator was guilty of misconduct for ***refusing to hear evidence pertinent and material to the controversy.***

## 1.  <u>The Arbitrator's Decision to Limit Discovery was Misconduct</u>

Defendant argues that "[t]he Arbitrator did not limit discovery because Plaintiff never sought the discovery he now claims was "essential." This statement is incorrect.

On April 4, 2023, Frank served a Notice of Deposition of Elon Musk, setting Musk's deposition for August 1, 2023.  (**4-ER-500-503**) On April 24, 2023, a Joint Discovery Plan was submitted to the arbitrator, reflecting the arbitrator's position that was set forth in her February 15, 2023, email, and further stating that:

> The Parties initially will be able to conduct (3) depositions per side (not including expert witnesses) and one PMQ deposition. Additional depositions will require a showing of good cause to the Arbitrator. Pursuant to the Arbitrator's direction, any Party seeking additional depositions must show good cause for same on an individual basis (not thematic). (**4-ER-494-495; 4-ER-506**)

Nearly four months after Frank noticed the deposition of Elon Musk, Tesla's counsel objected to the Notice of Deposition of Elon Musk, stating that counsel was not available on the noticed date, and also that:

> Tesla further objects to the Notice as baseless, harassing, unduly burdensome, and unreasonable. The Notice seeks testimony beyond

the permissible scope of discovery that is not likely admissible, not material to proof of claims and defenses raised in the pleadings, not relevant to the subject matter of this litigation, and not reasonably calculated to lead to the discovery of admissible evidence. (**4-ER-490-491**)

Elon Musk's deposition was never taken, and Musk was not allowed to testify at the arbitration. Frank then tried to compel the deposition of Troy Jones (**3-ER-445-454**), which was ultimately not allowed by the arbitrator, although Troy Jones did testify at the arbitration.

Frank wanted to depose both Elon Musk and Troy Jones regarding Tesla's anti-DEI (Diversity, Equity, Inclusion) policy and because Frank believed Musk was directly involved in the decision to terminate Frank as evidenced by an email copied to Musk and that two of his direct reports (Troy Jones and Allie Arebalo) were involved. First, in Frank's Request to Compel Deposition of Troy Jones, Frank argued that "Jones may be aware of Tesla's policy against Diversity Equity and Inclusion which the others didn't seem to know." (**3-ER-449**) Tesla's position was that "Tesla does not have a policy against DEI, which is perhaps why Holt and Miric 'didn't seem to know' about it. I have no idea what you are talking about." (**3-ER-449**) The Request to Compel Deposition of Troy Jones included an email from Frank's counsel James G. Bohm to Tesla's counsel Kiran Lopez, which included a quote from Elon Musk that DEI "is just as morally wrong as any other racism and sexism." (**3-ER-452**)

Additional depositions would also have been valuable to show whether there was a systemic pattern of mistreating African American employees in management at Tesla. Frank alleges in his complaint that Tesla engaged in discriminatory practices and harassment under FEHA; additional depositions of supervisors such as Elon Musk, Troy Jones, and others that worked with Frank were crucial to Frank's ability to present relevant and material evidence about his claims. Limiting Frank's ability to obtain this critical information and evidence prejudiced the rights of Frank and prevented him from receiving a fundamentally fair hearing. *Move, Inc., supra*, 840 F.3d 1152, 1158 (9th Cir. 2016).

Here, the Arbitrator restricted discovery by limiting depositions to three depositions per party and any additional depositions would require a showing of good cause. In the Proposed Discovery Plan, Frank expressed his desire to abide by the discovery rules consistent with the California Rules of Civil Procedure, which does not put a limit on the number of persons each party can depose. **(4-ER-508-516**) In the proposed discovery plan, Frank explained that there were twelve individuals that he would like to depose in order to obtain the necessary material evidence needed to present his case and have a fair hearing. The arbitrator's decision to limit the discovery available to Frank constituted misconduct because it unfairly prejudiced Frank by refusing him a fair opportunity to be heard.

Defendant contends that "[s]ettled California law has long recognized the "apex" deposition doctrine, under which a party seeking to depose a company's high-ranking officer must show both that the officer has unique personal knowledge relevant to the action, and the relevant information cannot be obtained from alternative sources, citing *Liberty Mutual Ins. Co. v. Superior Court*, 10 Cal. App. 4th 1282, 1289 (1992).

However, Defendant does not fully cite *Liberty Mutual*, *supra*, at 1289, which explains and holds:

> Consistent with these federal decisions, we hold that when a plaintiff seeks to depose a corporate president or other official at the highest level of corporate management, and that official moves for a protective order to prohibit the deposition, the trial court should first determine whether the plaintiff has shown good cause that the official has unique or superior personal knowledge of discoverable information. If not, as will presumably often be the case in the instance of a large national or international corporation, the trial court should issue the protective order and first require the plaintiff to obtain the necessary discovery through less intrusive methods. These would include interrogatories directed to the high-level official to explore the state of his or her knowledge or involvement in plaintiff's case; the deposition of lower level employees with appropriate knowledge and involvement in the subject matter of the litigation; and the organizational deposition of the corporation itself, which will require the corporation to produce for deposition the most qualified officer or employee to testify on its behalf as to the specified matters to be raised at the deposition. (§ 2025, subd. (d)(6).) Should these avenues be exhausted, and the ***plaintiff make a colorable showing of good cause that the high-level official possesses necessary information to the case, the trial court may then lift the protective order and allow the deposition to proceed***. [Emphasis added]

17

Plaintiff did make a ***colorable showing of good cause that the high-level
official possesses necessary information to the case***, and it was error for the
arbitrator to not allow Plaintiff to depose Elon Musk.

### 2. <u>The Arbitrator Exceeded Her Powers</u>

Arbitrator exceeded her powers by: (1) granting summary judgment when
triable issues of fact existed; and (2) limiting discovery. The limitations on
discovery have already been discussed, *above*.

One of the cases defendant cites, *Schoenduve Corp. v. Lucent Technologies,
Inc.*, 442 F.3d 727 (9th Cir. 2006) at 734, acknowledges that "[u]nder <u>9 U.S.C. §
10(a)(3)</u>, we may vacate an arbitration award if the arbitrator was guilty of
misconduct in 'refusing to hear evidence pertinent and material to the controversy;
or of any other misbehavior by which the rights of any party have been
prejudiced.'"

*Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F. 3d 634 (9th Cir.
2010) at 645, is distinguishable because the citation defendant provides concerns
procedural matters, finding that "[b]ecause nothing in the parties' agreement
removed the arbitrators' authority to resolve procedural matters, we need only find
that the panel's interpretation of the agreement was plausible."

### a. The Judgment Entered Against Frank Resulted from the Arbitrator Exceeding Her Power by Granting Summary Judgment When Triable Issues of Fact Exist

The Court may make an order vacating the award upon the application of any party to the arbitration where the arbitrator exceeded their powers. 9 U.S.C. § 10(a)(4). Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(a). All reasonable inferences must be drawn in favor of the opposing party and ***summary judgment cannot be granted when the facts are susceptible to more than one reasonable inference***. *Tolan v. Cotton*, 572 U.S. 650, 656-657 (2014); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 147 (1970); see also **Exhibit 24** at page 7.

First, Defendant argues that "the Arbitrator explicitly applied the correct standard to the record evidence and ruled that some causes of action raised a triable issue, but others did not." This is incorrect as all reasonable inferences must be drawn in favor of the opposing party and ***summary judgment cannot be granted when the facts are susceptible to more than one reasonable inference***.

Second, the Arbitrator exceeded her powers because her grant of partial summary judgment was ***not*** in accord with the Arbitration Agreement.

19

Defendant cites *Lagstein* for the proposition that so long as "the [arbitrator's] interpretation of the agreement was plausible," courts must uphold her interpretation. *Lagstein*, 607 F.3d. 634, 645 (2010). This citation only referred to the Lagstein court finding that "[b]ecause nothing in the parties' agreement removed the arbitrators' authority to resolve procedural matters, we need only find that the panel's interpretation of the agreement was plausible." *Id*. at 645. Defendant also cites *Lagstein* that: "An award is completely irrational only where the arbitration decision fails to draw its essence from the agreement." *Lagstein*, 607 F.3d at 642. However, the *Lagstein* court was questioning whether the award is 'irrational' with respect to an ***insurance*** contract (not an arbitration contract). *Id*. at 642.

Regarding disregard of the law, the *Lagstein* court, *supra*, at 641, explains:

> First, the district court erred in concluding that the size of the arbitration awards demonstrated manifest disregard of the law. " 'Manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.,* 44 F.3d 826, 832 (9th Cir.1995). To vacate an arbitration award on this ground, "[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it."

In the present matter, the arbitrator recognized the applicable law, and then ignored it, granting partial summary judgment when ***summary judgment cannot be***

20

***granted when the facts are susceptible to more than one reasonable inference***

*Tolan v. Cotton*, 572 U.S. 650, 656-657 (2014); *Adickes v. S.H. Kress & Co.*, 398
U.S. 144, 147 (1970); see also **Exhibit 24** at page 7.

Third, regarding the *South City Motors* case, Defendant implies that Plaintiff
cannot cite this case. A case is unreported if it has not been published in a hard-
copy reporter series, such as the National Reporter System series. However, there
is a special note on **Federal Appendix (Fed. Appx.) cases:**

- **Unpublished** Federal Court of Appeals cases from 2001–2021 were
  included in the Federal Appendix (Fed. Appx.) hard-copy reporter.

- When Fed. Appx. is the only hard-copy reporter citation available for a case,
  that case is treated as **Unreported** when applying the *Publication
  Status* filter.

Federal Rule of Appellate Procedure 32.1 permits attorneys to cite to federal
courts of appeals their unpublished opinions issued 2007 or later. The *South City
Motors* case was an unpublished opinion issued later than 2007.

Throughout the course of this litigation, Frank has consistently shown that
there are disputes of material facts surrounding the issue presented in his
complaint. There was both circumstantial evidence and statistical evidence
supporting Frank's FEHA claims. Viewing the evidence in the light most
favorable to Frank, an arbitrator would not be justified in granting summary

judgment regarding any racial discrimination and harassment claim Frank alleged in his complaint. The arbitrator even stated that Frank presented sufficient facts to show that an objectively reasonable person could believe that they had a meritorious claim. **3-ER-4-6-417**.

Tesla argues that the following collectively does not prove discrimination, which may explain why Tesla has so many discrimination lawsuits against it:

- Being asked to impersonate a black manager

- A manager lobbying against an individual's promotion

- Lack of black managers

### b. The Arbitrator Did Not Permissibly Set Discovery

After the district ordered Frank to be compelled to arbitrate his claims, with the guarantee that he would retain all rights and remedies that he is entitled to in a court of law, the arbitrator proceeded to disregard the governing Arbitration Agreement and act outside the scope of the contract between Frank and Tesla at the urging of Tesla. The terms of the Arbitration Agreement, which would allow the parties to abide by the discovery rules under California Code of Civil Procedure (or by the Federal Rules of Civil Procedure) was not followed by the arbitrator. The arbitrator initially stated that she would allow two depositions per side without a showing of good cause, and any additional deposition would require a showing of good cause. **4-ER-505-506.** This is a significant limitation compared

to the discovery rights under FRCP Rule 30, which allows for ten depositions to be taken without permission from the court. Fed Rule Civ. Proc. 30(a). The arbitrator also stated that she would be willing to allow a certain number of depositions if the parties mutually agreed on a number. **4-ER-505-506.** When provided with a proposed discovery plan, each party was allowed to suggest their recommendations as to how discovery was to be carried out. Frank's position was consistent with both the Federal Rules of Civil Procedure and with California Code of Civil Procedure, which allows for ten depositions to be taken and any additional depositions to be allowed by a showing of good cause. **4-ER-508-516**. Similar to its previous arbitration hearings, Tesla suggested that depositions be limited to three per side and any additional depositions must be approved by the arbitrator. **4-ER-508-516**. The arbitrator agreed with Tesla and limited discovery to three depositions per party and any additional depositions must be proven by the party showing good cause. **4-ER-505-506.** The arbitrator's actions by refusing to follow the terms outlined in the Arbitration Agreement were outside the scope of her authority as arbitrator and thus prove she exceeded her power.

//

//

//

//

## <u>CONCLUSION</u>

Appellant respectfully request the following relief: Reversal of the district court's decisions Granting Motion to Compel Arbitration and Denying Motion to Vacate Arbitration Award, and remand for further proceedings.

Date:  1/5/2026

BOHM WILDISH & MATSEN, LLP
*/s/ James G. Bohm*
James G. Bohm, Esq.
*Attorneys for Appellant Naymon Frank*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s) No. 25-4168**

I am the attorney or self-represented party.

This brief contains 5461 words, including 5461 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties.
    [  ] a party or parties are filing a single brief in response to multiple briefs.
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ James G. Bohm           **Date** 1/5/2026
*(use "s/[typed name]" to sign electronically-filed documents)*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 25-4168

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

| | |
|---|---|
| Stephanie Stroup, Esq.<br>TESLA, INC.<br>31353 Huntwood Avenue<br>Hayward, CA 94544<br>(510) 239-1413<br>sstroup@tesla.com; lmartino@tesla.com | Ray Cardozo Esq.<br>101 2nd St Ste 1800<br>San Francisco, CA 94105<br>T: (415) 543-8700<br>F: (415) 391-8269<br>rcardozo@reedsmith.com |

**Description of Document(s)** *(required for all documents)*:

APPELLANT'S REPLY BRIEF

**Signature** | /s/ Cynthia Lopez | **Date** | 1/5/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15** | *Rev. 12/01/2018*